## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JIM MARTIN o/b/o/ SUE MARTIN,**
**Plaintiff,**

**v.**                                    **Case No: 5:09cv335/SPM/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
**Defendant.**

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Martin's application for disability insurance benefits AND Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

**Plaintiff Sue Martin filed applications for benefits claiming an onset of disability as of September 6, 2002. The applications were denied initially and on reconsideration, and Ms. Martin requested a hearing before an administrative law judge (ALJ). A hearing was held on March 13, 2008 at which Ms. Martin was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 17-23) and Ms. Martin requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 6-8). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).**

## FINDINGS OF THE ALJ

**Relative to the issues raised in this appeal, the ALJ found that Ms. Martin met the insured status requirements of the Act through June 30, 2004, but not thereafter; that she had not engaged in any substantial gainful activity since her alleged onset date; that she had severe impairments of (1) lumbar degenerative disc disease, (2) foot drop, (3) vertigo and (4) degenerative joint disease of the hips, but that she did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform light work except for precautions to guard against seizures; that she could perform the duties of her past relevant work as a credit clerk; and that she was not disabled as defined in the Act.**

## STANDARD OF REVIEW

**In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.**

1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that

the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." **42 U.S.C. § 423(d)(2)(A).**

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot

perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The medical records in the administrative file show that Ms. Martin was treated primarily by her family practice physician, Herbert Brooks, M.D., from 2002 through at least September 2007.[1]  During 2002, Ms. Martin saw Dr. Brooks on seven occasions. She complained generally of hot flashes, irritability and depression. She was prescribed Xanax for the depression.  At one point she complained of a small swelling in her right lower leg and Dr. Brooks noted that pain was out of proportion to his findings.  He prescribed Lortab but noted that it should be limited to only four pills a day.  Later in the year Ms. Martin's leg pain continued and a CT scan was scheduled but there is no reported result in the administrative file (tr. 253-254).  On January 18, 2003, an MRI of Ms. Martin's right leg showed a 2 x 2 x 3 centimeter nodule in her right calf.  A follow up ultrasound confirmed the mass (tr. 250-251).  On April 2, 2003, the mass was removed surgically.  It was not malignant.  The surgeon noted that the mass was close to the fibula and apparently pressed against the peroneal nerve, possibly causing some neuropathy (tr. 104).

During 2003 Ms. Martin saw Dr. Brooks a total of 14 times.  She had complaints of anxiety due to family health problems.  After the surgical removal of the mass from her leg she starting complaining about pain and swelling in her right ankle.  Her medication was prescribed as before (tr. 249-253).

During 2004, Ms. Martin saw Dr. Brooks 12 times.  In early January she complained of pain in her right arm and a few months later said that she had pain in her right ankle.  A month later the pain was in her left leg and hip with tingling in her feet over the previous two days.  She felt she had a tumor in her left leg and told

---

[1]Dr. Brooks' records are hand-written, and the full dates of many of the visits were cut off in the copying process.  Ms. Martin generally saw Dr. Brooks on a monthly basis so the exact dates are not set out herein. However, the months are noted where appropriate.

Dr. Brooks that tests had shown two tumors there.  However, a CT scan of the left leg dated January 26, 2004 showed only some mild degenerative changes in the hip joints.  Images of the lower leg showed no swelling, and no tumor or evidence of inflammation.  An x-ray of her right foot the same day was read as normal.  A CT scan of the lumbar spine and hips done on January 4, 2004 showed significant spinal stenosis at L4-5 and L5-S1 with possible reduction of the cross-sectional area of the spinal canal at L3-4.  The stenosis was felt to be related to osteophytes of the facet joints and vertebral body  margins. (tr. 119-122).  In the summer of 2004, Ms. Martin was under a lot of stress, had pain in her left leg, and later in the year complained of pulled muscles in her neck and a catch in her back (tr. 247-249).

Ms. Martin went to the emergency room twice in 2004, once in April and once in May, the first time complaining of right leg and ankle pain, the second time complaining of left leg pain.  A Doppler study done of the left leg showed no thrombosis or other abnormality (tr. 122-125).

In 2005, Ms. Martin saw Dr. Brooks six times, complaining generally of stress and, beginning in the summer, dizziness with frequent falls for no known reason.  She said she had pain in her right foot and leg cramps at night.  Dr. Brooks wrote "vertigo" in the record.  She was kept on Xanax, but her Lortab prescription had been changed to Soma (tr. 244-246).  Also in 2005, Ms. Martin went to the emergency room in January, suffering from dehydration and in July, complaining of chest pain (tr. 118, 128).  She was discharged without further difficulties.

On September 30, 2005, Dr. Brooks filled out a disability form in which he noted slightly decreased motion in Ms. Martin's right foot and ankle.  There were no deficits in the extremities even though Ms. Martin said her leg gave way and she fell.  Grip strength was 5/5 and dexterity was normal.  There was a slight right limp and Ms. Martin could squat, but walked on her toes and heels poorly.  She did not need an assistive device for ambulation (tr. 245).

In 2006, Ms. Martin saw Dr. Brooks 12 times. Her condition did not change significantly. There were still days when she felt bad, felt stress, and complained of pain in her legs. In June she complained of dizzy spells and still complained of that condition, along with falling, through the summer (tr. 242-244).

In 2007 the records continue through the month of August. Ms. Martin's condition continued pretty much as before although she also complained of restless leg syndrome and was having anxiety problems because her husband had suffered a stroke (tr. 239-242).

On May 11, 2007, Dr. Brooks filled out a Physical Capacities Evaluation form in which he opined that Ms. Martin could lift ten pounds occasionally and up to five pounds frequently, could sit for four hours with frequent position changes, could stand or walk for one hour during an eight hour day, did not need an assistive device, had frequent falls and increasing pain with activity and had increased anxiety in stressful situations. He also felt that her medication impaired her ability to function at a normal level. On a Clinical Assessment of Pain form he opined that pain was present to such an extent as to be distracting to adequate work, that working increased the pain, and that drug side effects could be expected to be severe and to limit effectiveness (tr. 240-241).

Ms. Martin was examined by four physicians or mental health practitioners as part of her application process. She saw Jerold Derkaz, M.D., a family practitioner, on November 19, 2005. On presentation she complained of chronic leg pain since 2001 with surgical removal of a tumor, frequent chest pain with stress, hypertension, depression and spinal stenosis of the lumbar spine. She said she had worked as a truck driver until 2002 when she quit working due to pain in her right leg. Dr. Derkaz reviewed the CT scans of June 2004. On physical examination he noted the absense of abnormal curvature in the neck. There was no tenderness and range of motion was normal. The thoracic spine was normal, as was the lumbar spine, except for point tenderness. There was full range of motion in the lumbar spine. Ms. Martin's

gait included a right-sided limp and she was unable to heel or toe walk. Straight leg raising was negative in both the sitting and lying down positions. Her arms, hands and elbows were normal. There was full range of motion in the knees with no tenderness, swelling or crepitation. There was pain in the right leg but no ankle swelling and no foot deformity. Her nervous system was intact except for some decreased pin prick on the outer side of the right thigh and calf. Reflexes were normal and equally reactive bilaterally and there was some atrophy on the right leg with associated muscle weakness. Dr. Derkaz' diagnoses were depression with anxiety, suicidal ideation, chest pain, chronic headache, hypertension, lumbar spinal stenosis, muscle weakness in the right leg, muscle cramps in both legs, decreased sensation in the right leg and history of surgical procedure in the right leg. Dr. Derkaz did not suggest any limitations on activities (tr. 146-152).

In May, 2006 Ms. Martin was seen by Efiong Andem, M.D., a general practitioner. Dr. Andem noted that Ms. Martin could dress and undress without difficulty, could walk and sit without any problem, and had good communication skills. On examination her neck was supple, and flexion, extension and rotation were normal. Her gait was normal and there was no sign of inflammation in the leg. She seemed to drag her right leg but there was no swelling, redness or warmth in the joints. Her low back had no redness or swelling, there was no muscle spasm and Ms. Martin was able to bend over and touch her toes with only moderate discomfort. Flexion and extension of the spine were normal. Her arms were normal, her legs were equal in size and she was 100% mobile during passive and active movements. She could walk on her heels and toes. She was able to stand on one leg with good balance and appeared to be comfortable and changed positions without any difficulty. She did not use or require an assistive device for walking although she said she had a cane for the dragging of her right leg but did not use it because it did not help. Straight leg raising on the right was positive at 45º due to pain. Neurological testing was normal, reflexes were normal and sensation was

intact by pinprick except for her right calf and foot. She was noted to have normal mental status without anxiety or depression. Dr. Andem's impression was hypertension, foot drop on the right per history, status post tumor removal in the right leg, history of anxiety/depression, history of sinusitis, and chronic headaches per history (tr. 192-198).

Ms. Martin was seen for psychological evaluation twice by George Horvat, Ph.D. The first evaluation was done on December 16, 2005. On mental status examination her attention was distractable and anxiety interfered with her concentration. Her memory was normal. Eye contact was normal but her facial expression was depressed. Her mood and affect were also depressed. She appeared to be preoccupied with thoughts of suicide but showed no signs of hallucinations. She appeared to be of average intelligence and her judgment and decisions-making skills were normal. Her main stressor was her illness for which her coping skills appeared to be exhausted. She had thought about suicide quite a bit in the last year and a half but had no plan. She denied being "crazy" and said she was a good person. She felt that she was impaired as far as being out in public. Dr. Horvat's diagnosis was major depressive disorder, recurrent, panic disorder and post traumatic stress disorder. As prognosis, Dr. Horvat opined that if Ms. Martin could return to work physically there were no psychological reasons why she could not do so. She needed treatment but that could be scheduled around her work requirements (tr. 153-155).

Ms. Martin saw Dr. Horvat again on May 31, 2006. Her history was essentially the same and she complained mainly of depression and anxiety. Her mental status examination was not significantly different from the first examination but she went into some detail concerning her first husbands threats to kill her. He allegedly was going to throw her in a canal at "alligator alley" because he knew she couldn't swim. She also reported pain in her legs. She thought about suicide but was raised to believe it was wrong. She could name the previous five presidents and could

explain proverbs.  She again said she was depressed and that her nerves were bad.
This time Dr. Horvat's diagnosis was post-traumatic stress disorder, major
depressive disorder, recurrent, panic disorder and pain disorder.  He again opined
that if she could be cleared physically to return to work there were no psychological
reasons why she could not do so (tr. 199-201).


## DISCUSSION

Ms. Martin argues that the ALJ erred (1) in failing to give appropriate weight
to the opinion of her treating physician while relying on the opinions of non-
examining physicians and (2) in finding that her depression was not severe, and that
she was disabled from her onset date.  The Commissioner argues that the ALJ's
findings were supported by substantial evidence and must, therefore, be sustained.
The issue thus presented is whether the ALJ's decision that Ms. Martin was not
disabled, in light of her physical and mental condition, age, education, work
experience, and residual functional capacity, is supported by substantial evidence
in the record.

1.      Physician opinions.

Ms. Martin first contends that the ALJ glossed over Dr. Brooks' opinions
concerning her limitations and did not discount those opinions properly.  He
allegedly then went further and based his findings largely on the opinions of non-
examining physicians contrary to law.

Absent good cause, the opinion of a claimant's treating physician must be
accorded considerable or substantial weight by the Commissioner.  *Phillips v.
Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,
1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985);
*Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:
(1) the treating physician's opinion was not bolstered by the evidence; (2) the
evidence supported a contrary finding; or (3) the treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11ᵗʰ Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11ᵗʰ Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. See 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11ᵗʰ Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11ᵗʰ Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11ᵗʰ Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5ᵗʰ Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is

reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[2] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Much of Ms. Martin's alleged disability came from her subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226.

---

[2]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

[3]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of*

*Health and Human Services*, 941 F.2d 1529, 1532 (11ᵗʰ Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5ᵗʰ Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11ᵗʰ Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

The ALJ properly discounted Dr. Brooks' opinion. He noted that Dr. Brooks' records did not support a finding of disability, that the lack of sensory deficits belied foot-drop as a major problem, that prescribed medication controlled Ms. Martin's subjective complaints of pain, and that more recent complaints of back pain

---

[4] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11ᵗʰ Cir.1981) (en banc).

occurred long after the date last insured.  The ALJ further noted that the findings of Drs. Derkaz and Andem were essentially normal.  There was substantial record evidence to support the ALJ's findings and Ms. Martin is not entitled to reversal on this ground.

        2.      <u>Depression.</u>

        Ms. Martin also contends that the ALJ erred in not finding that Ms. Martin's depression was severe.  At step two the ALJ must determine whether the claimant has a severe impairment.  20 C.F.R. § 1520(c).  The burden at this step is on the claimant.  *Chester v. Bowen, supra.*  The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> (a)  Non-severe impairment(s).  An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> (b) Basic work activities.  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include–
>
> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations;  and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521.

The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial,

only that the ALJ must properly justify his finding on that issue. And the ALJ's findings must be supported by substantial evidence.

Reports of the two examinations done by Dr. Horvat are the only mental health records in the administrative file. Dr. Horvat diagnosed depression but did not indicate that Ms. Martin's depression interfered in her ability to work, a fact the ALJ noted. The ALJ also explained that Ms. Martin's daily activities, which included cooking, caring for a pet, doing laundry, cleaning house, driving and shopping supported a finding that there was no limitation on activities of daily living, mild limitation of social functioning, no limitation in concentration, persistence or pace, and no episodes of decompensation. Although it is a close question given the minimal requirements for a finding of a severe impairment, the record supports the ALJ's finding.

And if there was error in not finding Ms. Martin's depression to be severe, any such error was harmless. Courts will disregard any errors or defects in a lower tribunal that "do not affect any party's substantial rights." Fed.R.Civ.P. 61 (harmless error); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the context of a social security case). However, reversal is appropriate if the ALJ fails to provide the court with "sufficient basis for a determination that proper legal principles have been followed." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Dr. Horvat stated, twice, that if Ms. Martin was physically able to work there were no psychological impediments to her doing so. This opinion, coupled with the ALJ's appropriately supported finding that Ms. Martin's complaints were not wholly credible and that she could do the full range of light work (except for necessary seizure precautions), did not direct a finding that Ms. Martin's depression, while severe, was so severe as to cause her to be disabled. She has not shown error, and even if there was error, the error was harmless. Ms. Martin is not entitled to reversal on this ground.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED** and that the clerk be directed to close the file.

At Pensacola, Florida this 23rd day of September, 2010.


/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).